PEOPLE ex rel. SWEET v. RAYMOND, Mayor, et al.

(Supreme Court, Appellate Division, Second Department. March 5, 1909.)

1. CERTIORARI (§ 33*)—PERSONS AGGRIEVED—DESIGNATION OF OFFICIAL NEWS-PAPER—"PARTY AGGRIEVED."

A city charter (Laws 1899, p. 192, c. 128, § 62) provided that the council should designate as the official newspapers two papers representing the two principal political parties. The publishers of a newspaper not designated, claiming to represent one of the parties, brought certiorari to review the action of the council. Held, in the absence of a showing that there were no other newspapers published in the city, representing the principles of that party, the publisher was not a "party aggrieved," within Code Civ. Proc. § 2127, providing that the application for writ of certiorari must be made by the party aggrieved.

[Ed. Note.—For other cases, see Certiorari, Cent. Dig. § 44; Dec. Dig. § 33.*

For other definitions, see Words and Phrases, vol. 1, pp. 273–278; vol. 8, pp. 7569–7570.]

2. CERTIORARI (§ 33*)—PERSONS AGGRIEVED—DESIGNATION OF OFFICIAL NEWS-PAPER.

Petitioner was not a party aggrieved where, at the time the writ is asked for, the official year for which the newspaper was designated had terminated, and there was no claim that petitioner had printed any city notices for which he had not received pay, since the determination of the question could be of no advantage to him.

[Ed. Note.—For other cases, see Certiorari, Cent. Dig. § 44; Dec. Dig. § 33.*]

Certiorari by the People, on the relation of Henry Sweet, against George G. Raymond, Mayor, and others, to review the action of the city council in designating official newspapers. Writ quashed, and proceedings dismissed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before HIRSCHBERG, P. J., and WOODWARD, GAY-NOR, JENKS, and BURR, JJ.

Myer Nussbaum, for relator.

Joseph W. Middlebrook, for respondent Forbes.

BURR, J. The charter of the city of New Rochelle provides, among other things, that:

"The common council shall, at its first meeting in each official year or as soon thereafter as practicable, fix and determine the legal fee per folio at which all notices, ordinances, by-laws, rules and regulations of the common council, * * * and such other matters as the common council may direct to be published, shall be published by the official newspapers of said city and thereupon shall designate two newspapers published in said city that fairly represent the two principal political parties into which the people of the city are divided, in which the same shall be published at the fees so prescribed. The newspapers so designated shall be the official newspapers of the city for the ensuing official year for the purposes aforesaid and until the next annual designation." Laws 1899, p. 192, c. 128, § 62.

By the same act it is further provided that the official year of the city shall, except as may be therein otherwise provided, commence with the 1st day of January in each year. Id. § 5. On the 28th day of January, 1908, the common council of the city adopted a resolution, which was subsequently approved by the mayor, which, among other things, provided that the legal fee for the publication of notices, ordinances, and such other matters as the common council might direct to be published, should be "fixed and determined at the sum or price of 50 cents per folio for each and every insertion, and that the New Rochelle Press and the New Rochelle Paragraph, two newspapers published in the city of New Rochelle, that fairly represent the two principal political parties into which the people of the city are divided," should be, and they were thereby, designated as the two newspapers in which said matter should be published, which two newspapers should be the official newspapers of the city of New Rochelle for the ensuing year. Thereafter, in accordance with the terms of such resolution, the various notices, ordinances, by-laws, rules, and regulations of the common council and of the boards of the said city of New Rochelle were delivered to and accepted and printed by the said papers in the regular issues thereof for such ensuing year.

This proceeding is brought, on the relation of Henry Sweet, to review the determination of the common council in so far as it designated the New Rochelle Paragraph as one of the papers in which said notices should be published. The relator claims that, while the New Rochelle Press fairly represents the Democratic party, the New Rochelle Paragraph does not fairly represent the Republican party, which parties are the two principal political parties into which the people of the city are divided.

At the threshold of the proceeding we are met with two objections to the maintenance thereof which seem to us to be insuperable. An application for a writ of certiorari must be made by, or in behalf of, a person aggrieved by the determination to be reviewed. Code Civ. Proc. § 2127; People ex rel. Second Avenue Railroad Co. v.

Board of Commissioners of Parks, 97 N. Y. 37. It appears that the relator is the publisher of a newspaper published in the city of New Rochelle called the New Rochelle Pioneer, which paper he claims has constantly and consistently advocated the principles of, and fairly represented, the Republican party. It does not appear, however, that there are not other newspapers published in the said city which in like manner may be said to fairly represent the principles of that party, and there is nothing from which this court can determine that, if the decision of the common council were set aside, the paper of which the relator is the owner and publisher would be designated as one of the official newspapers of the city. It follows, therefore, that the relator is not a person aggrieved by the determination of the common council within the meaning of the statute.

Again, the ensuing official year for which the newspaper known as the New Rochelle Paragraph was designated as one of the official newspapers of the city terminated on the 1st day of January, 1909. There is no claim that any of the notices or ordinances required to be published in the official newspapers of the said city have been published during the year past in the New Rochelle Pioneer, of which the relator is the owner and publisher. No claim could therefore arise in his favor against the city if the determination sought to be reviewed was erroneous, since the city would not be liable to him for services which he had not rendered. If the respondent Forbes, who is the owner and publisher of the New Rochelle Paragraph, has no valid claim against the city because the designation of that paper as one of the official newspapers was in direct violation of the provisions of the statute, it may be that a taxpayer's action will lie to restrain the payment of the claim, or to recover back the moneys, if unlawfully paid.

Be that as it may, for the reason stated, this proceeding is improperly brought, and the writ of certiorari must be quashed, and the proceedings dismissed, with costs.

Writ quashed, and proceedings dismissed, with $50 costs. HIRSCHBERG, P. J., and JENKS, J., concur. WOODWARD, J., concurs in separate opinion, and GAYNOR, J., concurs on the ground that the action of the common council is not reviewable, and that he does not see how the publisher, after doing the service, could be prevented from getting the compensation by a taxpayer's action; that his newspaper is the legal appointee, and that is conclusive on the question of compensation.

WOODWARD, J. (concurring.) While it is probably doubtful whether the relator has such an interest in this controversy as to permit him to raise the questions here presented, I am not disposed to place my concurrence upon any mere technical defect. The parties have treated this as a legitimate controversy between themselves, and for my part I think the broad question should be disposed of in harmony with the prevailing law of the state. The relator appears to be the publisher of a newspaper in New Rochelle, and he seeks, upon this review, to overturn the action of the common council of that city in designating the New Rochelle Press (Democratic) and the New Rochelle Paragraph (Republican) as the official papers of that city, under the provisions of the charter. The char-

ter (chapter 128, p. 152, Laws 1899) provides for the designation of "two newspapers published in said city that fairly represent the two principal political parties into which the people of the city are divided," and it is the contention of the relator that the New Rochelle Paragraph, a newspaper selected by the common council as fairly representing the Republican element of the city, is not within the language of the statute, in that it does not fairly represent the Republican party. Robert L. Forbes, editor and publisher of the New Rochelle Paragraph, has intervened, and he avers that for a period of 12 years he has consistently and uniformly supported the principles of the party, and that he has uniformly supported the candidates of the Republican party for all political offices; that, in the case of the few minor offices where he has failed to support the party nominations, his paper's course has been due to the fact of an honest belief that the nominations in question were offensive and repugnant to the principles of the Republican party, and that there was abundant justification for that belief.

The relator, in the presence of a long line of judicial utterances indicating clearly that the courts have no sympathy with the effort to use these statutory provisions, designed to give the widest practical publicity with a minimum of expenditure, for the purpose of coercing or punishing the publishers of newspapers, is forced to contend that the language of the charter of the city of New Rochelle is peculiar in its character, and that it was designed to limit the choice of the common council, in effect, to the dictum of the local Republican committee, which in 1903 removed Mr. Forbes from membership in that committee and declared that his newspaper was not to be recognized as representing the Republican party. Mr. Forbes concedes that he has, on certain occasions, opposed the election of certain local candidates for judicial and municipal offices; but his declaration of consistent support of Republican principles for a period of 12 years, and of his uniform support of Republican candidates for political offices, cannot be controverted here, and the common council of the city of New Rochelle, made up of men who are familiar with all the facts, are entirely competent to judge of the question of whether the Paragraph "fairly represents the two political parties into which the people of the city are divided." The Republican party is not confined to the city of New Rochelle, nor is it within the jurisdiction of any local committee of the party. The Republican party is a national party, and we know of no rule or usage which permits of a local committee of that party to determine the political standing of a newspaper or an individual. A committee, contrary to the usual line of assumption on the part of members of such committees, is not a body of plenary powers. It has only such powers, properly speaking, as are specially delegated to it, or such as are necessarily involved in the execution of the powers delegated, and no one has ever pointed out any delegation of the authority of the Republicans of the city of New Rochelle to a local committee to say whether the Paragraph fairly represents them or not. The action of this committee, in the absence of such an authority,

is mere usurpation. It does not represent the Republican party for this purpose, for it was not selected with that purpose in view, nor has it ever received such authority, so far as appears.

The Legislature, on the contrary, has pointed out the common council as the body which shall determine whether a newspaper fairly represents a majority party, and. in the absence of facts conclusively showing that the newspaper designated did not fairly represent such party there would be no proper ground for the courts to interfere. For all that appears here, the Paragraph may have devoted practically all of its space to the advocacy of the principles and to the promotion of the candidates and policies of the Republican party in its national and state manifestations, at the very time that this local committee was removing Mr. Forbes from its membership and issuing its manifesto against his newspaper. The mere fact that a newspaper refuses to give its sanction to every candidate who is placed in nomination in the name of a great political party is not conclusive of its standing as a fair representative of the party. There are times when newspapers owe a higher duty than allegiance to a mere party name, and under such circumstances they are not to be judged from the standpoint of those whose selfish purposes may be interfered with, but by what Emerson would call the "average tendency"; and, tried by this test, in so far as the record goes in the matter now before us, there is nothing to indicate any abuse of the power intrusted to the officials of the city of New Rochelle. We are not discussing the particular quarrel between the parties to this controversy. We are simply recognizing the broad principle of law which prevails in this class of cases, and pointing out the reasons which make it contrary to public policy to attempt the belittling process of punishing the public press for the assertion of that independence which is essential to the welfare of a free government.

For these reasons, I concur in the quashing of this writ.